UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WILLIAM HOWARD PARKER,

                                        Plaintiff,

                v.

CAROLYN W. COLVIN,[1] Commissioner of
 Social Security,

                                        Defendant.

_____

**REPORT
and
RECOMMENDATION**

**12-CV-0137S(F)**

APPEARANCES:          BERNHARDI AND LUKASIK LAW OFFICES
                      Attorneys for Plaintiff
                      LYNN M. KWON-DZIKIY, of Counsel
                      950-A Union Road
                      Suite 240
                      West Seneca, New York 14224

                      WILLIAM J. HOCHUL, JR.
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      GAIL Y. MITCHELL
                      Assistant United States Attorney, of Counsel
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York 14202, and

                      STEPHEN P. CONTE
                      Regional Chief Counsel - Region II
                      KRISTINA COHN
                      Assistant Regional Counsel
                      United States Social Security Administration
                      Office of the General Counsel, of Counsel
                      26 Federal Plaza
                      Room 3904
                      New York, New York 10278

_____

[1]Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable William M. Skretny on May 9, 2013. (Doc. No. 19). The matter is presently before the court on motions for judgment on the pleadings, filed on November 13, 2012, by Defendant (Doc. No. 13), and on November 13, 2012, by Plaintiff (Doc. No. 11).

## BACKGROUND

Plaintiff William Parker ("Plaintiff" or "Parker"), seeks review of Defendant's decision denying him Disability Insurance Benefits ("DIB") ("disability benefits") under, Title II of the Social Security Act ("the Act"), and Supplemental Security Income Benefits ("SSI") benefits under Title XVI of the Act. In denying Plaintiff's application for disability benefits, Defendant determined Plaintiff had the severe impairments of panic disorder with agoraphobia, generalized anxiety disorder, post traumatic stress disorder ("PTSD"), bipolar disorder, depression, intermittent explosive disorder, and history of substance abuse in remission, but does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 12).[2] Defendant further determined Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels within twelve months of the alleged onset date of December 18, 2008,[3] with the limitation of moderately limited social functioning. (R. 15). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

[3] On February 16, 2010, Plaintiff amended the original onset date of disability from December 21, 2007, to December 18, 2008, the date Plaintiff alleges Plaintiff became free from using illegal substances. (R. 153).

through the date of the Administrative Law Judge's decision on April 6, 2010.  *Id.*

## PROCEDURAL HISTORY

Plaintiff filed applications for disability benefits on January 11, 2008 (R. 88), alleging disability based on bipolar disorder, obsessive compulsive disorder, anxiety, explosive temperament problem, depression, carpal tunnel syndrome, knee arthritis, and right hand pain.  (R. 108).  The application was initially denied by Defendant on February 26, 2008 (R. 47), and pursuant to Plaintiff's request, filed August 8, 2008 (R. 55), a hearing was held before Administrative Law Judge William E. Straub ("Straub" or "the ALJ") on February 16, 2010, in Buffalo, New York.  (R. 24-42).  Plaintiff, represented by Barbara Brooks Bundy ("Bundy"), a representative from Erie County Social Services, appeared and testified at the hearing.  (R. 28-42).  The ALJ's decision denying the claim was rendered on April 6, 2010.  (R. 7-23).

On June 9, 2010, Plaintiff requested review of the ALJ's decision by the Appeals Council.  (R. 87).  The ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on December 12, 2011.  (R. 1-5). This action followed on February 14, 2012, with Plaintiff essentially alleging the ALJ erred by failing to find him disabled.  (Doc. No. 1).

Defendant's answer, filed June 14, 2012 (Doc. No. 5), was accompanied by the record of the administrative proceedings.  On November 13, 2012, Defendant filed a motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 14) ("Defendant's Memorandum").  Plaintiff filed, on November 13, 2012, Plaintiff's motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 12) ("Plaintiff's

Memorandum"). On December 13, 2012, Plaintiff filed Plaintiff's Reply Memorandum of Law (Doc. No. 17) ("Plaintiff's Reply") in support of Plaintiff's motion for judgment on the pleadings. In further support of Defendant's motion, Defendant filed on December 14, 2012, Defendant's Reply Memorandum of Law (Doc. No. 18) ("Defendant's Reply"). Oral argument was deemed unnecessary. Based on the following, Defendant's motion should be DENIED, Plaintiff's motion should be GRANTED, and the matter REMANDED for further proceedings consistent with this Report and Recommendation.

## FACTS[4]

Plaintiff, William Howard Parker ("Parker" or "Plaintiff"), was born on September 25, 1978, attended special education classes in school until grade 8 (R. 280), lives alone (R. 88), and worked most recently as a dishwasher from 2002 until October 16, 2007, when Plaintiff was fired following an argument with Plaintiff's supervisor. (R. 108-9). Plaintiff alleges he is not able to work because he suffers bipolar disorder, obsessive compulsive disorder, explosive temperament, depression, carpal tunnel syndrome, and knee arthritis (R. 108), and is unable to leave the house as a result of anxiety, agoraphobia[5] and PTSD (R. 38).

On July 7, 2003, Plaintiff visited Krishnan Kartha, M.D. ("Dr. Kartha") with complaints of back pain. (R. 157). Dr. Kartha completed a magnetic resonance imaging ("MRI") scan of Plaintiff's lumbrosacral spine that showed mild disc

---

[4]Taken from the pleadings and the administrative record.

[5]The condition of having an irrational fear of being in a public place (especially when crowded) which would be difficult to leave in a hurry if something . . . happens. Included in the places someone fears are shopping centers, theaters, and busy streets, as well as trains, busses, airplanes, and elevators. See 1-A Attorney's Dictionary of Medicine, A-3836.

degeneration of Plaintiff's L2-L3[6] and L4-L5 lumbar spinal discs with mild disc

dehydration and minimal posterior annular bulges with focal disc herniation, and mild

lower lumbar facet hypertrophy (enlargement) with slight narrowing of the foramina

(opening) at Plaintiff's L4-L5 disc segments. (R. 157-58). An MRI scan of Plaintiff's left

hip conducted by Lawrence Rand, M.D. ("Dr. Rand") the same day showed a small

amount of fluid in Plaintiff's left hip joint (R. 159), and an MRI scan of Plaintiff's cervical

spine revealed no evidence of spinal stenosis or cervical disc herniation. (R. 160).

Relevant to the period of disability, on October 27, 2008, Plaintiff voluntarily

sought admission to Horizon Health Services, a mental health facility in Buffalo, New

York, where Kristin Ahrens, M.D. ("Dr. Ahrens") a staff psychiatrist, evaluated Plaintiff

as alert and oriented, euthymic, and cognitively intact with very limited insight and

judgment. (R. 247). Dr. Ahrens reported Plaintiff was seeking psychiatric treatment

services as a result of being placed on probation for petit larceny charges and required

psychiatric counseling for anger management (R. 246), diagnosed Plaintiff with

marijuana dependence, cocaine and opiate abuse, antisocial traits, assessed Plaintiff

with a Global Assessment of Functioning ("GAF") score of 60,[7] and elected not to

prescribe psychiatric medication for Plaintiff because of Plaintiff's drug use. Dr. Ahrens

---

[6]L2-L3 and L4-L5 refer to numbered lumbar spine segments. *See generally*, Lumbar Spine Anatomy and Pain, *available at* http://www.spine-health.com/conditions/spine-anatomy/lumbar-spine-anatomy-and-pain (last visited July 18, 2013).

[7]The Global Assessment of Functioning (GAF) scale is used to report an individual's overall level of functioning. *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF of 41-50 indicates: Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or social functioning (*e.g.*, no friends, unable to keep a job) . . . A GAF of 51-60 [indicates] moderate symptoms (*e.g.*, flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). DSM-IV-TR at 32.

noted Plaintiff reported using marijuana "only once in a while" and "sporadically," and that Plaintiff was unemployed as a result of altercations with Plaintiff's supervisors. (R. 247). On November 5, 2008, Alcoholism and Substance Abuse Counselor Janette Botzenhart ("Counselor Botzenhart"), recommended Plaintiff receive more extensive drug treatment counseling in response to Plaintiff's increased drug use which Plaintiff refused. (R. 250). On November 12, 2008, Counselor Botzenhart discontinued Plaintiff's drug and alcohol treatment counseling because Plaintiff did not attend any of the recommended treatment sessions, and assessed Plaintiff with a GAF score of 40. (R. 248).

On December 18, 2008, Plaintiff sought treatment from Catholic Charities Behavioral Health Center for anxiety and agoraphobia (R. 332), and reported that on occasion Plaintiff would remain on public transportation longer than necessary because panic and anxiety made Plaintiff unable to move, and as a child, Plaintiff's father tied Plaintiff and his mother together in a locked closet. *Id.*

On January 5, 2009, Robert Owczarczak, MSW, ("Counselor Owczarczak"), a social worker with Monsignor Carr Institute ("MCI"), administered a Burns Depression Inventory[8] ("BDI") test on Plaintiff that showed Plaintiff was severely depressed. (R. 287-88). On January 13, 2009, Counselor Owczarczak administered a Burns Anxiety Inventory[9] ("BAI") test to measure Plaintiff's level of anxiety, and opined Plaintiff's BAI

---

[8]A Burns Depression Inventory rates a person's depression using the scale 0-4 (minimal or no depression), 5-10 (borderline depression), 11-20 (mild depression), 21-30 (moderate depression), 31-45 (severe depression).

[9]A Burns Anxiety Inventory rates a person's anxiety using the scale 0-4 (minimal or no anxiety), 5-10 (borderline anxiety), 11-20 (mild anxiety), 21-30 (moderate anxiety), 31-50 (severe anxiety), 51-99 (extreme anxiety or panic).

score of 90 indicated Plaintiff had extreme anxiety or panic,[10] and that Plaintiff's score of 20 of 30 on a mini mental status test the same day showed Plaintiff at mild risk of self harm.  (R. 324).  Plaintiff completed a drug and alcohol substance abuse history and noted Plaintiff's last marijuana use occurred on January 1, 2009,[11] that Plaintiff used amphetamines daily from the ages between 16 to 19 years old, and that Plaintiff used cocaine in June 2008, when forced to use the drug intravenously by his father.  (R. 282).  On January 14, 2009, Plaintiff's mother called MCI to report that Plaintiff was abused as a child by Plaintiff's father, and that Plaintiff was a pathological liar.  *Id*.

On January 21, 2009, John U. Napoli, M.D. ("Dr. Napoli"), a psychiatrist with MCI, evaluated Plaintiff with a GAF score of 30 (R. 268).  On January 22, 2009, Dr. Napoli provided psychiatric counseling to Plaintiff, and noted that Plaintiff reported feeling depressed for as long as Plaintiff can remember, that Plaintiff reported child abuse by his father that included being duct taped and locked in a closet, forced intimacy with female counterparts at age 8, that Plaintiff's father ripped Plaintiff's fingers off using pliers, and that Plaintiff was severely beaten on numerous occasions.  (R. 261).  Plaintiff reported that as a result of the abuse he suffered as a child, Plaintiff experiences frequent nightmares, flashbacks, and hallucinations, depression and anger, and that Plaintiff is always looking over his shoulder.  (R. 263).  Dr. Napoli diagnosed Plaintiff with major depression, PTSD and panic disorder, noted Plaintiff

---

[10]*See*, http://www.thelighterheart.com/forms/Pre-TherapyTesting.pdf. Last visited on July 25, 2013.

[11]Any reason for the inconsistency between Plaintiff's reported last drug use on January 9, 2009 (R. 282), and Plaintiff's alleged substance free date is not clear from the record. Plaintiff's amended onset date of December 18, 2008 will be used for the purposes of this discussion.

exhibited an increased startle response, prescribed Deplin (depression), Topomil

(sleep), and Lexapro (depression), and assessed Plaintiff with a GAF score of 55.  *Id*.

On January 28, 2009, Plaintiff cancelled a counseling session scheduled for February

3, 2009.  *Id*.  During a therapy session on February 9, 2009, Counselor Owczarczak

noted Plaintiff exhibited severe depression.  (R. 318).  On February 19, 2009, Dr. Napoli

reviewed Plaintiff's medications, noted Plaintiff reported Topomil was not helping

Plaintiff sleep, and that Lexapro was not alleviating Plaintiff's depression.  (R. 264).  On

February 20, 2009, Counselor Owczarczak assessed Plaintiff with a stable mental state

and depression  (R. 318), and on March 6, 2009, noted no change in Plaintiff's

symptoms.  (R. 315).  On March 12, 2009, Counselor Owczarczak provided mental

health counseling to Plaintiff, noted that Plaintiff was extremely anxious and "could not

sit for one minute," and that Plaintiff blacks out and does not understand or remember

how to get places.  (R. 314).  A treatment session with Counselor Owczarczak on

March 27, 2009, showed Plaintiff with continued black outs, poor eye contact and no

change in symptoms.  (R. 311).  On April 6, 2009, Counselor Owczarczak assessed

Plaintiff with a BDI score of 30, that Counselor Owczarczak categorized as severe

depression.  (R. 285-86).  Counselor Owczarczak opined Plaintiff's BAI score of 67 the

same day indicated Plaintiff had extreme anxiety or panic.  (R. 291-92).  On April 18,

2009, Dr. Napoli completed a comprehensive examination of Plaintiff, diagnosed

Plaintiff with PTSD, major depression, and panic disorder with agoraphobia, and

assessed Plaintiff with a GAF score of 35.  (R. 267).  On May 13, 2009, Counselor

Owczarczak assessed Plaintiff with a BDI score of 26 (moderate depression)  (R. 283-

84), and a BAI score of 54 (extreme anxiety or panic).  (R. 289-90).

Dr. Napoli evaluated Plaintiff with a GAF score of 40 on February 23, 2009 (R. 338), a GAF score of 45 on October 15, 2009 (R. 337), and a GAF score of 49 on February 18, 2010 (R. 336), and a GAF score of 50 on May 6, 2010 (R. 335).

On July 30, 2009, Dr. Napoli and Counselor Owczarczak administered a mental functional limitation evaluation on Plaintiff that showed Plaintiff able to follow work rules and function independently 30-50% of the time in a work setting, able to interact appropriately with other workers, the public, and supervisors less than 30% of the time, deal with work stress, respond appropriately to changes in a work setting, and maintain attention and concentration less than 30% of the time (R. 326). Dr. Napoli opined Plaintiff was able to understand and remember complex job instructions, carry out complex job instructions, use judgment, understand and remember detailed but not complex job instructions, behave in an emotionally stable manner, relate predictably in social settings, demonstrate reliability and carry out simple instructions less than 30% of the time, was able to understand and remember simple job instructions 30-59% of the time, and maintain personal appearance 81% or more of the time. (R. 327). Dr. Napoli opined that the frequent flashbacks Plaintiff experienced as a result of Plaintiff's PTSD and anxiety hinder Plaintiff's ability to function in society (R. 326), and that Plaintiff's black outs and violent outbursts support Dr. Napoli's assessments of Plaintiff's ability to work. (R. 327-28).

On August 4, 2009, Dr. Napoli completed a Medical Report for Disability Determination on behalf of the New York State Department of Social Services, and evaluated Plaintiff with "marked" restriction of daily activities, serious impairment in ability to relate to other people, and opined that Plaintiff's anxiety resulted in confusion,

9

stomach upset, pacing, shaking and fidgeting, and that Plaintiff was not able to engage in Plaintiff's usual work.  (R. 331).

On February 16, 2010, Social Worker Kathy Aman ("Social Worker Aman"), a social worker with MCI, accompanied Plaintiff to the administrative hearing, and noted that Plaintiff was crying, sniffling, shaking, and constantly moving his legs during the hearing, and that when the hearing ended Plaintiff had to practice deep breathing for 25 minutes to calm down.  (R. 340).

On April 10, 2010 (R. 335), July 9, 2010 (R. 355), and October 9, 2010 (R. 356), Dr. Napoli assessed Plaintiff with a GAF score of 50.  A BDI test administered on November 16, 2010, showed Plaintiff with severe depression (R. 357-58), and a BAI test administered  the same day showed Plaintiff with severe anxiety or panic.  (R. 359-60).  On March 3, 2011, Dr. Napoli completed a Psychiatric Medical Report and opined Plaintiff's activities of daily living include washing his hands 20 to 30 times each day, difficulty sleeping, that Plaintiff does not socialize with anyone other than family members and does not leave the house where other people may be, that Plaintiff is unable to eat and lost 17 pounds in two months, that Plaintiff walks his dog no farther than the yard, and that Plaintiff is able to straighten and clean the house.  (R. 373).  Dr. Napoli opined that when Plaintiff is highly anxious he blacks out and becomes violent, and is not able to engage in sustained work, and that Plaintiff's mental impairment was expected to last more than 12 months.  (R. 374).

## DISCUSSION

### 1.    Disability Determination Under the Social Security Act

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which
> can be expected to result in death or which has lasted or
> can be expected to last for a continuous period of not less
> than 12 months. . ..  An individual shall be determined to be
> under a disability only if his physical or mental impairment or
> impairments are of such severity that he is not only unable
> to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national
> economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves he or she is severely impaired and unable to perform

any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.    Standard and Scope of Judicial Review

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion."  *Consolidated*

*Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical

facts, diagnoses or medical opinions based on these facts, subjective evidence of pain

or disability (testified to by the claimant and others), and . . . educational background,

age and work experience."  *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983)

(quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating

physician is supported by medically acceptable techniques and results from frequent

examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567

(2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is

supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g)

and 1383(c)(3). "Congress has instructed . . . that the factual findings of the

Secretary,[12] if supported by substantial evidence, shall be conclusive." *Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must

follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520

and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v.*

*Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the

applicant is engaged in substantial gainful activity during the period for which benefits

are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in

such activity the inquiry ceases and the claimant is not eligible for disability benefits. *Id.*

The next step is to determine whether the applicant has a severe impairment which

significantly limits the physical or mental ability to do basic work activities as defined in

the applicable regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent an

---

[12] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled, regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[13] 42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920. *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits. *Id.* Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g),

---

[13] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

416.920(g).  The applicant bears the burden of proof as to the first four steps, while the

Commissioner bears the burden of proof on the final step relating to other employment.

*Berry,* 675 F.2d at 467.  In reviewing the administrative finding, the court must follow the

five-step analysis to determine if there was substantial evidence on which the

Commissioner based the decision.  *Richardson*, 402 U.S. at 410.

**B.**     **Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity.

"Substantial gainful activity" is defined as "work that involves doing significant and

productive physical or mental duties" done for pay or profit.  20 C.F.R. § 404.1510(a)(b).

Substantial work activity includes work activity that is done on a part-time basis even if it

includes less responsibility or pay than work previously performed.  20 C.F.R. §

404.1572(a).  Earnings may also determine engagement in substantial gainful activity.

20 C.F.R. § 404.1574.  In this case, the ALJ concluded Plaintiff did not engage in

substantial gainful activity since December 18, 2008, the onset date of the alleged

disability.  (R. 12).  Plaintiff does not contest this determination.

**C.**     **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a

severe medically determinable physical or mental impairment that meets the duration

requirement in 20 C.F.R. § 404.1509 ("§ 1409") and significantly limits the Plaintiff's

ability to do "basic work activities."  The Act defines "basic work activities" as "abilities

and aptitudes necessary to do most jobs," and includes physical functions like walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for

seeing, hearing, and speaking; understanding, carrying out, and remembering simple

instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined Plaintiff had the severe impairments of panic disorder with agoraphobia, generalized anxiety disorder, PTSD, bipolar disorder, depression, intermittent explosive disorder, and history of polysubstance abuse in remission as defined under 20 C.F.R. § 404.1520(c).  (R. 9).  Plaintiff does not dispute this determination.

**D.**    **Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments").  If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled").  The relevant listing of impairments in this case includes 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.04 (Affective Disorders, 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.06 (Anxiety Related Disorders), and 20 C.F.R. Pt. 404, Subt. P, Appendix 1, § 12.08 (Personality Disorders).

In this case, the ALJ determined Plaintiff's mental impairments do not meet or equal the criteria necessary to establish disability under § § 12.04, 12.06, 12.08, or

12.09.[14]  (R. 14).  Plaintiff contests the ALJ's finding Plaintiff is not disabled under §

12.04, and alleges that Plaintiff is also disabled pursuant to Social Security Ruling

("SSR") 85-15.  Plaintiff's Memorandum at 23.

## § 12.04 Affective disorders

As relevant, disability under § 12.04 (affective disorders), is characterized by "a

disturbance of mood, accompanied by a full or partial manic or depressive syndrome."

20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04A1 requires medically documented

persistence, either continuous or intermittent, of four of the following:

(a)     Anhedonia or pervasive loss of interest in almost all activities; or
(b)     Appetite disturbance with change in weight; or
(c)     Sleep disturbance; or
(d)     Psychomotor agitation or retardation; or
(e)     Decreased energy; or
(f)     Feelings of guilt or worthlessness; or
(g)     Difficulty concentrating or thinking; or
(h)     Thoughts of suicide; or
(i)     Hallucinations, delusions or paranoid thinking; . . .
       AND
B.      Resulting in at least two of the following:
1.      Marked restriction of activities of daily living; or
2.      Marked difficulties in maintaining social functioning; or
3.      Marked difficulties in maintaining concentration, persistence, or pace; or
4.      Repeated episodes of decompensation, each of extended duration. OR
C.      Medically documented history of a chronic affective disorder of at least
       2 years' duration that has caused more than a minimal limitation of
       ability to do basic work activities, with symptoms or signs currently
       attenuated by medication or psychosocial support, and one of the
       following:
1.      Repeated episodes of decompensation, each of extended duration; or
2.      A residual disease process that has resulted in such marginal adjustment
       that even a minimal increase in mental demands or change in the
       environment would be predicted to cause the individual to decompensate;
       or

---

[14]Plaintiff's amended onset date removes substance abuse from Plaintiff's alleged impairments. In the interest of expediency, the court declines to discuss such impairment.

> 3. Current history of 1 or more years' inability to function outside of a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 ("§ 12.04").

In this case, the ALJ determined Plaintiff does not meet the criteria required for disability under paragraphs B or C of § § 12.04, 12.06, 12.08 or 12.09, and that as a result Plaintiff is not disabled. (R. 14). The ALJ did not determine whether Plaintiff meets the criteria of § 12.04A, presumably because substantial evidence in the record supports Plaintiff's mental impairment meets the criteria of severity under § 12.04A.

To establish disability under § 12.04, a claimant must meet the criteria either for both § § 12.04A and 12.04B, or 12.04C, and contrary to the ALJ's finding otherwise, substantial evidence in the record supports Plaintiff's mental impairment meets the criteria under 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04C, and Plaintiff is thus disabled. In particular, substantial evidence supports the ALJ's finding that Plaintiff's depression and anxiety are characterized by four or more of the required criteria under § 12.04A1, as Dr. Napoli diagnosed Plaintiff with severe depression and anxiety during several counseling sessions (R. 267, 357-59, 318), noted Plaintiff lost 17 pounds in two months (R. 373) (§ 12.04A1b)), washes his hands 20 to 30 times each day (§12.04A1d), exhibits poor concentration (R. 326) (§ 12.04A1g), does not leave the house for fear that he will come into contact with other people (R. 267) (§ 12.04A1i), and experiences flashbacks and hallucinations as a result of child abuse (R. 263) (§ 12.04A1i). In order to be disabled under § 12.04 however, in addition to meeting a minimum of four criteria under § 12.04A1, a disability claimant's mental impairment must also result in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation each of extended duration;

20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.04B ("§ 12.04B").

In this case, the ALJ determined Plaintiff's depression and anxiety did not result in marked restriction to Plaintiff's activities of daily living, social functioning, concentration, persistence or pace, or result in repeated episodes of decompensation of extended duration (R. 14).  Plaintiff contests the ALJ's finding Plaintiff's depression and anxiety do not result in marked restriction to Plaintiff's activities of daily living (§ 12.04B1), or Plaintiff's ability to maintain social functioning (§ 12.04B2), Plaintiff's Memorandum at 23, and this contention is supported by substantial evidence.

Activities of daily living include adaptive activities such as cleaning, cooking, shopping, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C1 ("§ 12.00C1").  In this case, Plaintiff testified Plaintiff does not take public transportation because he experiences severe panic attacks (R. 332), does not leave home alone (R. 373), has violent blackouts, and was fired from work as a result of altercations with coworkers and supervisors (R. 38, 327), and on August 4, 2009, Dr. Napoli, Plaintiff's treating psychiatrist, opined that Plaintiff exhibited "marked" restriction to activities of daily living, and was seriously impaired in his ability to relate to other people.  (R. 331).  Substantial evidence thus establishes Plaintiff's affective disorder results in marked restriction to Plaintiff's activities of daily living and Plaintiff meets the criteria under § 12.04B1.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04B2 ("§ 12.04B2") refers to a disability claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals including family members, friends, neighbors, grocery clerks, landlords, or bus drivers.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C2 ("§ 12.00C2").  In this case, the ALJ's determination Plaintiff's affective disorders do not result in marked difficulties in maintaining social functioning is contrary to substantial evidence in the record.  In particular, Plaintiff testified he was fired from Rose's Furniture Warehouse and Bella Roma Pizzeria (R. 29-30) for fighting, was not able to work because he "just can't be around people," is unable to take public transportation because of panic attacks, never leaves his house without supervision (R. 37), and freaks out with blackouts and violence at family gatherings.  (R. 38).  On June 30, 2009, Dr. Napoli administered a mental functional limitation evaluation on Plaintiff that showed Plaintiff able to interact appropriately with other workers, supervisors, and the general public less than 30% of the time, and opined Plaintiff's PTSD, flashbacks and anxiety hinder Plaintiff's ability to function in society.  (R. 326).  On August 4, 2009, Dr. Napoli evaluated Plaintiff with a seriously impaired ability to relate to other people.  (R. 331).  As such, in addition to meeting the criteria under §§  12.04A and 12.04B1, substantial evidence establishes Plaintiff meets the criteria under § 12.04B2.  Plaintiff is therefore disabled under § 12.04, and the matter should be remanded for calculation of benefits.

Although Plaintiff does not contest the ALJ's finding Plaintiff does not meet the criteria for disability under § 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.06 (anxiety related disorders) and 12.08 (personality disorders), in the interest of completeness, the undersigned considers whether substantial evidence supports the ALJ's finding Plaintiff

is not disabled under § § 12.06 or 12.08.

## § 12.06 Anxiety related disorders

In the instant case, the ALJ determined that Plaintiff was not disabled under § 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 ("§ 12.06") (anxiety related disorders), as substantial evidence did not support that Plaintiff's anxiety resulted in a complete inability to function independently outside of one's home as required under § 12.06C. (R. 15).  To establish disability under § 12.06, anxiety is either the predominant disturbance, or is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.  The required level of severity for an anxiety related disorder is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied:

A. Medically documented findings of at least one of the following:
1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
a. Motor tension; or
b. Autonomic hyperactivity; or
c. Apprehensive expectation; or
d. Vigilance and scanning; or
2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
4. Recurrent obsessions or compulsions which are a source of marked distress; or
5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
AND
B. Resulting in at least two of the following:
  1. Marked restriction of activities of daily living; or
  2. Marked difficulties in maintaining social functioning; or
  3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration. OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06.

In this case, the ALJ did not determine whether Plaintiff meets "paragraph A" criteria under § 12.06A, presumably because substantial evidence in the record established Plaintiff met the criteria under § 12.06A, a finding supported by substantial evidence in the record as Plaintiff suffers flashbacks (R. 263, 326) and hallucinations (R. 263) as a result of the abuse Plaintiff experienced as a child.

The ALJ's determination that substantial evidence does not establish Plaintiff meets the criteria for disability under § 12.06C (complete inability to function outside the area of one's home) (R. 15), is contrary to substantial evidence as Plaintiff testified that Plaintiff is not able to leave the house without supervision and never leaves the house alone (R. 373). Moreover, during the administrative hearing on February 16, 2010, Plaintiff was crying, sniffling, shaking, and constantly moving his legs, and had to practice deep breathing for 25 minutes at the end of the hearing to calm down (R. 340), and Dr. Napoli opined Plaintiff's anxiety hinders Plaintiff's ability to function in society (R. 326), and that Plaintiff was able to interact appropriately with the public, supervisors, deal with work stress, or respond to changes in a routine work setting less than 30 percent of the time. Plaintiff's mental impairments therefore result in marked restriction to Plaintiff's activities of daily living (§ 12.06B1) and marked difficulties in maintaining social functioning (§ 12.06B2), Discussion, *supra*, at 18-19, and the criteria under § 12.06C. Substantial evidence thus establishes Plaintiff meets the criteria for disability under § 12.06, and remand for calculation of benefits is required.

**§ 12.08 Personality disorders**

As a further alternative, a personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress.  Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.08 ("§ 12.08").  The required level of severity for a personality disorder is met when the requirements in both A and B are satisfied:

> A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
> 1. Seclusiveness or autistic thinking; or
> 2. Pathologically inappropriate suspiciousness or hostility, or
> 3. Oddities of thought, perception speech and behavior, or
> 4. Persistent disturbances of mood or affect, or
> 5. Pathological dependence, passivity, or aggressivity; or
> 6. Intense and unstable interpersonal relationships and impulsive and damaging behavior, AND
> B. Resulting in at least two of the following:
>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintaining social functioning; or
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or
>   4. Repeated episodes of decompensation, each of extended duration. OR
> C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.08.

In this case, substantial evidence establishes Plaintiff meets the criteria for disability under § 12.08 (personality disorders), as Plaintiff exhibits seclusiveness (R. 373), aggressiveness (R. 327), intense or unstable interpersonal relationships, impulsive and damaging behavior (R. 374), and, as discussed, Discussion, *supra*, at 18-19, resultant marked restriction of activities of daily living (§ 12.08B1) and marked difficulties in maintaining social functioning (§ 12.08B2).  Plaintiff is therefore disabled

under § 12.08, and remand for calculation of benefits is required.

Assuming the District Judge agrees with the undersigned's preceding recommendation for remand, and the ALJ then determines Plaintiff is disabled under § § 12.04, 12.06, or 12.08, the ALJ's consideration of the five step sequential steps in assessing Plaintiff's benefits claim should stop and benefits calculated. Should the District Judge disagree with the undersigned's recommendation for remand, however, the parties' remaining arguments are addressed in the alternative.

## E. "Residual Functional Capacity" to Perform Past Work

The fourth inquiry in the five-step analysis is whether the applicant has the "residual functional capacity" to perform past relevant work. "Residual functional capacity" is defined as the most work a claimant can still do despite limitations from an impairment and/or its related symptoms. 20 C.F.R. § 416.945(a). If a claimant's residual functional capacity is insufficient to allow the performance of past relevant work, the ALJ must assess the claimant's ability to adjust to any other work. 20 C.F.R. § 416.1560(3)(c). In this case, the ALJ determined that Plaintiff, with no past relevant work, had the residual functional capacity to perform a full range of work at all exertional levels. (R. 18). Plaintiff does not contest the ALJ's determination that Plaintiff has no past relevant work, but contests the ALJ's finding that Plaintiff's impairments that cause significant limitation in Plaintiff's ability to perform basic work activities, have little or no effect on the occupational base of unskilled work. Plaintiff's Memorandum at 26-27. Plaintiff further contends that the ALJ's residual capacity assessment violated the treating physician's rule, Plaintiff's Memorandum at 20-21, and contests the ALJ's assessment of Plaintiff's credibility. (R. 16).

**Treating Physician Rule**

Here, the ALJ rejected the opinion of Plaintiff's treating psychiatrist Dr. Napoli, determining that Dr. Napoli's opinions were based solely on Plaintiff's subjective complaints, were inconsistent with regard to Plaintiff's drug use, and based on an improper onset date. (R. 17). Plaintiff contends that the ALJ's failure to assign proper weight to the opinion of Dr. Napoli requires remand, as Dr. Napoli's mental residual functional capacity assessment of Plaintiff correctly relied on Plaintiff's subjective reports, and alternatively, it was the ALJ's duty to resolve any inconsistencies in the record and provide good reasons for rejecting Dr. Napoli's opinion. Plaintiff's Memorandum at 20-23. Defendant maintains the ALJ properly assigned little weight to the opinion of Dr. Napoli, as Dr. Napoli's treatment notes show Plaintiff had productive and proper speech, was fully oriented, had average intellectual functioning, fair insight and judgment, intact memory, appropriate affect, organized thoughts, good motivation, good concentration, and cooperation, and that Plaintiff's condition improved while Plaintiff was medicated and not using drugs. Defendant's Reply at 3.

20 C.F.R. § 404.1527(c)(2) requires the ALJ give a treating physician's opinion "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). In particular, the Act provides

> [g]enerally, we give more weight to opinions from your
> treating sources, since these sources are likely to be the
> medical professionals most able to provide a detailed,
> longitudinal picture of your medical impairment(s) and may
> bring a unique perspective to the medical evidence that
> cannot be obtained from the objective medical findings alone
> or from reports of individual examinations, such as

consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); *Clark v. Commissioner of Social Security*, 114 F.3d. 115, 118 (2d Cir. 1998).

The regulations define "treating source" as a claimant's "own physician, psychologist, or other acceptable medical source who provides [a claimant] ... with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502. Certain factors must be considered by the court in determining whether an ALJ correctly refused to give the "treating physician's opinion" controlling weight. These factors include: "i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark* 143 F.3d. at 118. Generally, the longer a claimant is treated and seen by a treating source, the more weight is to be afforded by the ALJ to the treating source's medical opinion, §404.1527(d)(2)(I), and added weight is given to specialist opinions and opinions supported by laboratory tests. *Id*.

In the instant case, the frequency and nature of Dr. Napoli's multiple medical examinations and supporting clinical tests establish Dr. Napoli is Plaintiff's treating physician for purposes of the Act. In particular, a comprehensive examination of Plaintiff by Dr. Napoli on April 18, 2009, showed Plaintiff with PTSD, major depression, panic disorder with agoraphobia, and a GAF test score of 35. (R. 267). A visit to Dr.

Napoli on July 15, 2009, showed Plaintiff with a GAF score of 40 (R. 338), and a visit to

Dr. Napoli on October 13, 2009, showed Plaintiff with a GAF score of 45. (R. 337). On

July 30, 2009, Dr. Napoli and Counselor Owczarczak administered a mental functional

limitation evaluation on Plaintiff that showed Plaintiff able to follow work rules and

function independently 30-50% of the time in a work setting, and able to interact

appropriately with other workers, the public, and supervisors less than 30% of the time,

deal with work stress, respond appropriately to changes in a work setting, and maintain

attention and concentration less than 30% of the time, and that Plaintiff's frequent

flashbacks from Plaintiff's PTSD, and anxiety hinders Plaintiff's ability to function in

society. (R. 326). Dr. Napoli opined Plaintiff was able to understand and remember

complex job instructions, carry out job instructions, use judgment, understand and

remember detailed, but not complex job instructions, behave in an emotionally stable

manner, relate predictably in social settings, demonstrate reliability and carry out simple

instructions less than 30% of the time, that Plaintiff was able to understand and

remember simple job instructions 30-59% of the time and maintain Plaintiff's personal

appearance 81% or more of the time (R. 327), and that Plaintiff's black outs and violent

outbursts supported Dr. Napoli's assessments of Plaintiff's ability to work, and that

Plaintiff was not using drugs or alcohol. (R. 327-28). Dr. Napoli completed a Medical

Report for Disability Determination on August 4, 2009, and opined Plaintiff had

"marked" restriction of daily activities, and was seriously impaired in his ability to relate

to other people (R. 331), and on March 3, 2011, completed a Psychiatric Medical

Report noting that Plaintiff does not socialize with other than family members, does not

leave the house to go to where other people may be, walks his dogs no further than the

yard (R. 373), is highly anxious, blacks out, becomes violent, and is not able to engage in sustained work. (R. 374). Counselor Owczarczak, acting under the direct supervision of Dr. Napoli, provided psychiatric counseling to Plaintiff on a minimum of eight separate occasions (R. 263, 283, 285, 299, 300, 301, 306, 326), assessments that support Dr. Napoli's opinion that Plaintiff has significant deficits in social functioning. According to the record, Dr. Napoli the treating psychiatrist examined Plaintiff on four occasions, administering medically recognized clinical tests (GAF) and a mental functioning evaluation (R. 267, 326, 337, 338) of which supported other evidence in the record including Plaintiff's testimony that Plaintiff suffers from psychiatric conditions that severely limit his capacity to function outside the home. As such, the ALJ's decision to assign little weight to the opinion of Dr. Napoli violates the treating physician rule and requires remand. *Clark*, 143 F. 3d at 118.

**Credibility of Plaintiff's Subjective Complaints**

In the instant case, the ALJ, as required, evaluated Plaintiff's impairment under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the record establishes Plaintiff has the severe impairments of panic disorder with agoraphobia, generalized anxiety disorder, PTSD, bipolar disorder, depression, intermittent explosive disorder, and history of polysubstance abuse, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent inconsistent with Plaintiff's testimony that Plaintiff never received treatment for his chemical dependency, that Plaintiff's mother believes Plaintiff is a pathological liar, and that Plaintiff is without a strong work record. (R. 17). Plaintiff contends that the ALJ failed to properly assess Plaintiff's credibility as

Plaintiff's testimony is supported by substantial evidence, and otherwise consistent with statements made by Plaintiff to Plaintiff's medical providers. Plaintiff's Reply at 7-8. The Commissioner maintains that the ALJ properly assessed Plaintiff's credibility, as Plaintiff's daily activities include spending time with Plaintiff's daughter, family, and dog, otherwise contradict Plaintiff's testimony that Plaintiff is disabled. Defendant's Reply at 24.

Pain or other symptoms may be important factors contributing to a disability claimant's functional loss. 20 C.F.R. § 404.1529(c)(3). Pain or other symptoms affect a claimant's ability to perform basic work activities if relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms. *Id*. Persistence and intensity of pain and other symptoms are used to determine the degree of adverse impact on an individual's functioning capacity. 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.00B2d. Psychiatric signs used to establish disability for a listed mental impairment (here § § 12.04, 12.06, 12.08), are "medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception [that must] also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. § 404.1528(b) ("§ 1528(b)").

"A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms," *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v.*

*Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)), and no evidence here indicates that Plaintiff's testimony substantially differs from evidence in the record.  Specifically, Plaintiff testified he was not able to socialize with persons outside of his home, never leaves the house alone, and suffers blackouts, a statement supported by Plaintiff's GAF scores on January 15, 2009 (GAF score 40) (R. 338)), April 18, 2009 (GAF score 35) (R. 267)), and on October 13, 2009 (GAF score 45) (R. 337)), and BAI scores that indicate Plaintiff has severe anxiety (R. 289-92, 324, 259-60).  Plaintiff's treating physicians repeatedly diagnosed Plaintiff with PTSD, depression, panic and anxiety and agoraphobia (R. 267, 268, 324), and on July 30, 2009, Dr. Napoli opined Plaintiff's anxiety hinders Plaintiff's ability to function in society (R. 326), and that Plaintiff was able to interact appropriately with the public, supervisors, deal with work stress, or respond to changes in a routine work setting less than 30 percent of the time.  *Id*.  Plaintiff's testimony is supported by substantial evidence and thus requires proper credit by the ALJ.  *Hartzog v. Astrue*, 2012 WL 4461749 at *8 (Sept. 25, 2012 W.D.N.Y.) (ALJ should credit claimant's testimony where supported by doctor's visits, therapy sessions and psychiatric evaluations).  Thus, Plaintiff's testimony is consistent with the clinical evaluations and opinions of Plaintiff's treating physician and psychological counselor, negating the ALJ's uncritical acceptance of Plaintiff's mother's opinion as to Plaintiff's tendency for lying.  Specifically, it does not follow that even if Plaintiff is a "pathological liar" that he has fabricated his psychological problems undetected by trained professionals.  Further, that one is capable of interacting appropriately with one's family and dog does not rule out that the person may also suffer from a broad range of psychological problems, particularly Plaintiff's fear of

strangers and unfamiliar places, diagnosed by an expert treating psychiatrist and a social worker and thoroughly documented in the record. *Janas v. Barnhart*, 451 F.Supp.2d 483, 503 (adverse speculation and overreaching by ALJ regarding Plaintiff's subjective complaints is contrary to Second Circuit's interpretation that Social Security Act is a remedial statute to be broadly construed and liberally applied). Therefore, substantial evidence does not support the ALJ's conclusion Plaintiff's testimony lacked credibility, a conclusion based on the ALJ's erroneous rejection of Plaintiff's treating physician testimony corroborated by objective clinical tests.

Upon remand, the ALJ should evaluate the credibility of Plaintiff's statements concerning the intensity, persistence, and effects of Plaintiff's mental impairments using substantial evidence in the record. *See Berry*, 675 F.2d 464 at 469 (court should not hesitate to remand where ALJ credibility determination is not based on evidence in the record).

## F.     Suitable Alternative Employment in the National Economy

Once an ALJ finds a claimant's impairments prevent a return to previous work, the burden shifts to the Commissioner to prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980). It is improper to determine a claimant's residual work capacity based solely upon an evaluation of the severity of the claimant's individual complaints. *DeLeon v. Secretary of Health and Human Services*, 734 F.2d 930, 937 (2d Cir. 1984). To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities

essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. In this case, Plaintiff does not allege any exertional limitations, and the ALJ determined Plaintiff's nonexertional limitations have little or no effect on the occupational base of Plaintiff's base of unskilled work at all levels. (R. 18).

An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work.[15] *Decker*, 647 F.2d at 294. In addition, the Commissioner must establish that the claimant's skills are transferrable to the new employment, if the claimant was employed in a "semi-skilled" or "skilled" job.[16] *Id*. at 294. This element is particularly important in determining the second prong of the test, whether suitable employment exists in the national economy. *Id*. at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the

---

[15] "Sedentary work" is defined as: "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools....Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

[16] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.
"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).
"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of vocational expert testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

In this case, the ALJ determined Plaintiff retained the residual functional capacity to perform work at all exertional levels with a moderate limitation in social functioning under 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 204.00, and that a significant erosion of Plaintiff's occupational base pursuant to Social Security Ruling 85-15 does not exist. (R. 18). Plaintiff contends the ALJ erred at this step of the analysis, relying solely on the Grids[17] without vocational expert ("VE") testimony as to the impact of Plaintiff's non exertional mental impairments on Plaintiff's ability to work. Plaintiff's Memorandum at 28. In response, Defendant maintains that Plaintiff's non exertional limitations do not substantially erode Plaintiff's ability to perform the basic demands of unskilled heavy work including Plaintiff's ability to understand, carry out, and remember simple instructions, respond appropriately to supervision and co-workers, and usual situations, or the ability to deal with changes in a routine stress work environment. Defendant's Reply at 3.

The Grids are used to determine whether alternative employment opportunities exist in the national economy, and establish a series of rules that direct a conclusion of whether a claimant is "disabled" or "not disabled." *Decker*, 647 F.2d at 296. Several

---

[17]The "Grids" refers to the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations, which contain a series of rules that may direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's residual functional capacity and vocational profile. *Decker v. Harris*, 647 F.2d 291, 296 (2d Cir. 1981).

factors direct such consideration, including age, education, and work experience. 20

C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). Social Security Ruling ("S.S.R.") 85-15[18]

(1985), directs "[w]here a person's only impairment is mental, is not of listing severity,

but does prevent the mental demands of past relevant work and prevents the

transferability of acquired work skills, the final consideration is whether the person can

be expected to perform unskilled work" and provides

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. <u>A substantial loss of ability to meet any of these basic work-related activities would severely limit the occupational base</u>. This, in turn, would justify a finding of disabled because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Social Security Ruling 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985) (underlining added).

The Second Circuit directs that necessity of VE testimony should be determined

on a case by case basis, and such testimony is required where a claimant's non

exertional impairments "significantly limit the range of work permitted by his exertional

limitations" *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (citing *Blacknall v.*

*Heckler*, 721 F.2d 1179,1181 (9th Cir. 1983)), or so narrow a claimant's possible range

of work as to deprive the claimant of any meaningful employment opportunity. *Id.* In

the instant case, the ALJ's sole reliance on the Grids without testimony from a

vocational expert as to any impact posed by Plaintiff's non exertional limitations, *i.e.*,

Plaintiff's mental impairments, is error, because, as discussed, Discussion, *supra*, at

---

[18]Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the SSA] ha[s] adopted." 20 C.F.R. § 404.35(b)(1).

24-26, the ALJ's residual functional capacity assessment violated the treating physician's rule and is thus without support of substantial evidence.

Remand is thus required to afford the ALJ the opportunity to further develop the record regarding the effects of Plaintiff's mental impairments on Plaintiff's ability to perform work at the "sedentary" unskilled level, including obtaining testimony from a vocational expert on this issue. Upon remand, the ALJ should make an "individualized determination that considers the impact of the limitations or restrictions on the number of sedentary, unskilled occupations or the total number of jobs to which the [Plaintiff] may be able to adjust, considering [Plaintiff's] age, education and work experience, including any transferable skills or education providing for direct entry into skilled work." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 201.00(h)(3).

## CONCLUSION

Based on the foregoing, Defendant's motion should be DENIED, Plaintiff's motion should be GRANTED, and the matter REMANDED for proceedings consistent with this Report and Recommendation, including calculation of benefits or, alternatively, for further development of the record and a new hearing.


Respectfully submitted,

/s/ *Leslie G. Foschio*


LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 30, 2013
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.</u>**

Thomas v. Arn, 474 U.S. 140 (1985); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); Wesolek v. Canadair Limited, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 30, 2013
            Buffalo, New York